**Naji Antoine TOKATLY, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 03–70473.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2004.

Filed June 10, 2004.

Janice K. Redfern, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for respondent.

Raquel E. Hecht, Eugene, OR, for petitioner.

Before: REINHARDT, SILVERMAN, and CLIFTON, Circuit Judges.

REINHARDT, Circuit Judge:

Naji Tokatly, native of Syria and legal permanent resident, appeals the BIA's streamlined decision finding that he was removable for having been convicted of a "crime of domestic violence," INA § 237(a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E). We hold that the *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) categorical and modified categorical approach is applicable to section 237(a)(2)(E)(i), and that neither the Board of Immigration Appeals (BIA or Board) nor this court may look beyond the record of conviction to determine whether the crime of which the alien was convicted was a "crime of domestic violence" within the meaning of the statute. Accordingly, we conclude that the Immigration Judge (IJ) erred in relying on testimonial evidence adduced at the immigration proceeding, including the petitioner's own admissions regarding the nature of his relationship with the victim, and in finding him removable under section 237(a)(2)(E)(i).[1]

### A. Factual and Procedural Background

Naji Tokatly was first admitted to the United States in 1989 as a student, and in 1993 he adjusted his status to legal permanent resident. In 1997 he was convicted in Oregon state court on charges of Burglary in the First Degree and Attempted Kidnaping in the First Degree, Or.Rev.Stat.

---

1. In view of our holding, we do not reach Tokatly's other two claims that section 237(a)(2)(E)(i) violates the Fifth Amendment to the Constitution because its terms are too vague, and that the BIA violated its own regulations in deciding to streamline this appeal.

§§ 164.225, 163.235, pursuant to a guilty plea.[2] By the terms of the plea agreement, Tokatly was placed on probation and ordered to pay $29,800 in compensatory damages and other monetary fines but was not sentenced to serve any time in prison. In 1998, the government charged him with removability under section 237(a)(2)(E)(i) for having been convicted of a "crime of domestic violence."[3]

At a hearing before the IJ in 1999, Tokatly contested removability under the "crime of domestic violence" provision on the basis that, while the evidence in the record of conviction established that his crime was a crime of violence, it did not establish that the violence was "domestic" within the meaning of the statute. In fact, the record of conviction—the government submitted the judgment, the indictment, and the guilty plea—did *not* serve to establish that the crime was "domestic."[4] For this reason, at the hearing, the government called as a witness the crime victim to testify as to the nature of her prior

relationship with Tokatly. Tokatly, through counsel, objected to the use of this testimonial evidence to establish what the record of conviction did not—namely, that his 1997 violation was a crime of "domestic" violence. The IJ overruled the objection, however, explaining: "the Immigration Judge does have to examine the facts behind the conviction."

Thereafter, the IJ determined—solely on the basis of the victim's testimony at the hearing—that Tokatly had "cohabited" with the victim in a "domestic" relationship, and that a crime of *domestic* violence had therefore been committed. The IJ then found that Tokatly was removable under section 237(a)(2)(E)(i).

Tokatly appealed to the BIA, arguing, *inter alia*, that the IJ erred in considering testimonial evidence outside the record of conviction to establish removability under section 237(a)(2)(E)(i). While the appeal was pending, however, Tokatly's approved I–130 visa for the unmarried son of a U.S. citizen became available. Accordingly, he

---

2. The terms of the plea agreement make it clear that the two charges arose out of a single incident. Throughout the proceedings, the government referred to the convictions as constituting a single predicate offense rather than two separate violations, *see infra* note 3, and the IJ followed suit. Because the issue on appeal is the same whether we treat the two crimes separately or together, for purposes of our analysis, we, too, refer to the crimes as one prior offense, rather than two.

3. The government initially charged Tokatly with removability under § 237(a)(2)(A)(i) on the basis of a conviction of a crime involving moral turpitude "committed within five years after admission" for which a sentence of one year or longer may be imposed. However, after the initial hearing before the IJ in 1998, the government withdrew this charge—apparently because Tokatly had not been convicted of the offense "within five years after admission." The government did not charge him with having been convicted of the aggravated felony of a "crime of violence," INA

§ 101(a)(43)(F), because a sentence of one year or more had not been imposed for the violation. It was after the moral turpitude charge was withdrawn that the government added the "crime of domestic violence" charge. It is that charge that is at issue here.

4. Section 237(a)(2)(E)(i) provides that a crime of *domestic* violence means:

... any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to the spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States, or any State, Indian tribal government, or unit of local government.

requested that the Board remand his case so that he could apply for alternative relief in the form of adjustment of status and cancellation of removal under section 212(h).

The BIA granted the unopposed motion, and in 2001, the IJ held a second hearing to consider Tokatly's petition for adjustment of status and cancellation of removal. In the course of this hearing, at which the issue was whether Tokatly was entitled, in the IJ's discretion, to relief from removal on extreme hardship grounds, Tokatly, as well as the victim, testified as to the nature of their prior romantic relationship. Following their testimony, the IJ questioned Tokatly's counsel about the status of Tokatly's claim that the government had failed to establish that he had been convicted of a "crime of domestic violence." When counsel stated that the issue was still on appeal, the IJ disagreed, and by persistent questioning elicited from counsel a statement that contradicted her initial answer: This time she replied that she was not still challenging the finding that the prior offense involved a crime of domestic violence under section 237(a)(2)(E)(i).[5] The IJ then returned to the issue that was the subject of the hearing, and, exercising his discretion, ruled that Tokatly did not merit relief in the form of adjustment of status or cancellation of removal. In the introductory section of his ruling, the IJ described the procedural history of the case, noting in one brief sentence counsel's purported "concession" regarding Tokatly's relationship to the victim and stating incorrectly that counsel had conceded removability under the "crime of domestic violence" provision.

Tokatly again appealed to the BIA, renewing his challenge to removability under section 237(a)(2)(E)(i). He reasserted his contention that the IJ improperly relied on evidence outside the record of conviction to establish that he had been convicted of a "crime of domestic violence." In response, the government did not contend that counsel's statement at the hearing constituted a waiver of Tokatly's claim, but rather addressed the issue on the merits, incorporating by reference the argument contained in its brief filed before the BIA on the first appeal. The Board simply affirmed the IJ's decision in a streamlined disposition.

In his petition before this court, Tokatly continues to contest removability under section 237(a)(2)(E)(i) on the basis that the IJ erred in relying on evidence outside the record of conviction. Indeed, he seeks review only of the first decision of the IJ, which dealt exclusively with the question whether he may be lawfully removed under that provision. He does not seek to overturn the IJ's second ruling, upon re-

---

**5.** The following is the colloquy that transpired:

IJ: Okay, and do you waive any claim that that finding [that petitioner lived with the victim] is incorrect?

Counsel: No, I don't, Your Honor.

IJ: Yes?

Counsel: There is still an appeal pending is my understanding.

IJ: There is no appeal pending. You got a remand. This is entirely in front of me now. There may be an appeal after my decision but there is no appeal pending. You received a remand on the issue of adjustment of status. I'm asking, do you still challenge the court's finding that he is deportable for having committed a crime, a crime of violence against a person with whom he cohabited?

Counsel: No I don't, Your Honor.

IJ: You don't what?

Counsel: I don't challenge that.

IJ: You don't challenge that, Okay ... Because that was an issue in the first appeal and I think the Court is entitled to know whether there is still any factual challenge to that.

mand from the Board, denying ancillary relief from removal in the form of adjustment of status and cancellation of removal under section 212(h).

■ Because the Board streamlined the case, we review the IJ's opinion as the final agency decision. *See Falcon Carriche v. Ashcroft,* 350 F.3d 845, 849 (9th Cir.2003). Here, although there are two IJ opinions in the administrative record, it is only the first ruling that Tokatly asks us to review. In this respect, it is significant that he sought a remand of the first BIA appeal in order to seek alternative forms of relief, and that, in so doing, he did not dismiss the initial appeal. Accordingly, we review the IJ's first opinion, as Tokatly requests, and consider the question whether, given the record of conviction that was before the IJ, Tokatly's burglary and attempted kidnaping conviction constitutes a lawful basis for removal under the INA's "crime of domestic violence" provision.

*B. Waiver*

■ As an initial matter, the government, citing *Rodas–Mendoza v. INS,* 246 F.3d 1237, 1240 (9th Cir.2001), contends that we lack jurisdiction to review Tokatly's claim respecting the IJ's erroneous reliance on testimonial evidence outside of the record of conviction because he waived this issue through counsel at a hearing before the IJ. The government's jurisdictional argument is incorrect: *Rodas–Mendoza* involved the statutory requirement of exhaustion, *see* INA § 242(d), and there we summarily declined to address one of petitioner's claims for the sole reason that he had failed to raise the issue before the BIA. Here, by contrast, Tokatly properly exhausted his claim by presenting it to the Board in his appellate briefs on both appeals. Accordingly, the BIA was "given the opportunity to review and adjudicate" the issue, and Tokatly "does not raise any

arguments for the first time on appeal" to this court. *Rojas–Garcia v. Ashcroft,* 339 F.3d 814, 819 (9th Cir.2003). Thus, section 242(d)'s jurisdictional bar to our review does not apply.

■ Moreover, it is well-established that "the government can 'waive waiver' implicitly by failing to assert it." *United States v. Garcia–Lopez,* 309 F.3d 1121, 1123 (9th Cir.2002) (citing other decisions to this effect); *see also United States v. Lewis,* 798 F.2d 1250 (9th Cir.1986); *Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir.1991). Here, following counsel's elicited "concession" at the adjustment of status hearing, and Tokatly's subsequent reaffirmation of his claim that the government failed to lawfully establish that he was "convicted of a crime of domestic violence" in his brief to the Board on his second appeal, the government, in its reply brief, did not argue waiver but instead elected to address the issue on the merits, incorporating by reference the argument contained in its brief to the Board on the first appeal. Under these circumstances, we conclude that the government has "waived" any waiver argument it may have had, and that we may proceed to address the merits of Tokatly's claim.

Finally, we emphasize once more that the subject of the second hearing was Tokatly's alternative claim for relief—not the question whether the conviction at issue constituted a proper basis for removal under section 237(a)(2)(E)(i). The latter claim had already been adjudicated at the first hearing. Tokatly's motion for remand of the appeal on that issue was solely for the purpose of seeking additional relief—adjustment of status and cancellation of removal under section 212(h). The IJ did not give Tokatly or his counsel any notice that he intended to re-open the question of removability under the "crime of domestic violence" provision, and he, in

fact, did not reopen that earlier determination. Nor did Tokatly's counsel ever suggest a desire to withdraw the claim that Tokatly was not removable under section 237(a)(2)(E)(i) prior to the IJ's persistent questioning as to counsel's intentions regarding his earlier ruling. To the contrary, Tokatly's counsel initially insisted that she was not waiving the claim and that it was still pending on appeal. *See supra* note 5. It was only when the court persisted in its questioning of her that counsel ultimately acquiesced and replied that she no longer sought to challenge removability under the "crime of domestic violence" provision.

In fact, the legal issue of removability was not material to the equitable question the IJ resolved on remand—the question whether relief in the form of cancellation of removal would be granted. Tokatly had the right to have the equitable relief issue resolved and to appeal both rulings to the Board concurrently, or alternatively, to renew his appeal, if his motion to adjust his status and obtain cancellation of removal was unsuccessful. In these circumstances, counsel's purported concession during the adjustment of status hearing had no binding effect with respect to Tokatly's right to appeal the earlier determination and Tokatly was free to withdraw any such statement by reasserting his claim on appeal.

## C. *Establishing Removability Under Section 237(a)(2)(E)(i)*

We now consider whether the IJ properly found Tokatly to be removable under section 237(a)(2)(E)(i). The "crime of domestic violence" removal provision states:

> Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.

8 U.S.C. § 1227(a)(2)(E)(i). The provision further explains:

> For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States, or any State, Indian tribal government, or unit of local government.

*Id.* In order to determine that Tokatly was convicted of a "crime of domestic violence" under section 237(a)(2)(E)(i), we would have to conclude that his crime was not only one of "violence," but also that the violence was "domestic" within the meaning of that section.

There is no dispute that the offense of which Tokatly was convicted is a crime of violence. The sole issue is whether he was convicted of a "crime of *domestic* violence." Tokatly asserts that the *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), categorical and modified categorical approach applies to this determination, and that the evidence in the record that the IJ was entitled to consult under *Taylor*—the judgment, the indictment, and the guilty plea from the state record of conviction—failed to establish that Tokatly's conviction was for a crime of *domestic* violence. In this connection, Tokatly asserts, the IJ erred in his assumption that he was required to "examine the facts behind the conviction," and in relying

on testimonial evidence outside the record of conviction to determine that the *conviction* qualified as a basis for removal under section 237(a)(2)(E)(i).

The government urges us to determine that the *Taylor* categorical and modified categorical approach applies only to a portion of the inquiry required under section 237(a)(2)(E)(i), and not to the entire examination of the conviction at issue. Specifically, the government asks us to characterize the "crime of violence" component as involving a statutory element of the offense that must be proved with regard to the record of the state conviction, and the requirement that there be a "domestic" relationship with the victim as involving a victim-related characteristic of the actual conduct engaged in by the defendant. In proposing that we apply this somewhat convoluted and bipolar methodology to the statutory inquiry, the government acknowledges that the "violence" inquiry is limited by *Taylor* to the record of conviction, yet asserts that the IJ should be able to rely on evidence outside of that record in determining whether the injury caused by the defendant *in fact* involved a "domestic" offense under § 237(a)(2)(E)(i).[6]

▮ The methodology this circuit and others follow in order to determine whether a conviction constitutes a predicate offense for deportation purposes is well-established. When possible, we apply the "categorical" approach, "looking only to the statutory definition[ ] of the prior offense." *Taylor*, 495 U.S. at 600, 110 S.Ct. 2143. However, when it is not clear from the statutory definition of the prior offense whether that offense constitutes a removable offense under section 237(a)(2)(E)(i), we apply a "modified" categorical approach under which we may look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction, including "the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." *See United States v. Rivera–Sanchez*, 247 F.3d 905, 908 (9th Cir.2001) (en banc). We do not, however, look beyond the record of conviction itself to the particular facts underlying the conviction. *See Taylor*, 495 U.S. at 600, 110 S.Ct. 2143. Accordingly, when the documents that we may consult under the "modified" approach are insufficient to establish that the offense the petitioner committed qualifies as a basis for removal under section 237(a)(2)(E)(i), we are compelled to hold that the government has not met its burden of proving that the conduct of which the defendant was convicted constitutes a predicate offense, and the conviction may not be used as a basis

---

**6.** For this proposition, the government relied in its brief on *Sutherland v. Reno*, 228 F.3d 171 (2d Cir.2000). *Sutherland*, however, contains no suggestion that the IJ may conduct an independent factual hearing to supplement the record of conviction. In *Sutherland*, the Second Circuit determined only that the petitioner's prior offense was a "crime of *domestic* violence" because his victim—his 19–year old step-daughter—qualified as " 'a person who [wa]s protected from [his] acts under the domestic or family violence laws of ... any State,' " *see* § 237(a)(2)(E)(i), due to the fact that " 'Massachusetts law protects all 'family or household members' from violent crimes and other forms of abuse.' " *Id.* at 177. Suth-

erland, unlike Tokatly, raised no contention that the evidence in the record of conviction failed to show that his "crime of violence" was a "domestic" offense within the meaning of the provision. Rather, he raised only the legal argument that the victim did not qualify as a "domestic" relative because she had not filed for a protective order under Massachusetts law. The Second Circuit resolved only that legal issue—i.e. whether the stepdaughter was covered by the pertinent Massachusetts law. Accordingly, the court had no occasion to question the applicability of the *Taylor* categorical and modified categorical approach to the determination whether petitioner's prior offense was a "crime of *domestic* violence."

for removal. *See United States v. Franklin,* 235 F.3d 1165, 1172 (9th Cir.2000).

■ Like the courts, the BIA has adhered to a categorical and modified categorical methodology in order to determine whether an alien's prior conviction constitutes a basis for removal under the INA. *See, e.g., In re Teixeira,* 21 I & N Dec. 316, 318–19 (BIA 1996) ("To determine whether the respondent was convicted of a [removable offense], we look first to the provisions of the law under which he stands convicted.... Where the statute under which an alien was convicted is divisible, we look to the record of conviction, and to other documents admissible as evidence in proving a criminal conviction, to determine whether the specific offense for which the alien was convicted constitutes a[ ] violation within the meaning of [the federal provision]."). While "it is proper [for the Board] to look to probative evidence outside the record of conviction in inquiring as to the circumstances surrounding the commission of [a] crime in order to determine whether a favorable exercise of *discretion* is warranted," "the Immigration Judge and this Board may *not* go beyond the record of conviction to determine the guilt or innocence of the alien." *In re Mendez–Moralez,* 21 I & N Dec. 296, 303 n. 1 (BIA 1996) (emphasis added).

■ Underlying both the Board's and the courts' consistent adherence to the

strictures of *Taylor* is the fundamental principle that, in determining whether a prior conviction constitutes a predicate offense, we must avoid "the enormous problems of re-litigating past convictions, especially in cases where the defendant pleads guilty and there is no record of the underlying facts." *Castillo–Rivera,* 244 F.3d at 1022. As the Board has explained:

> If we were to allow evidence that is not part of the record of conviction as proof of whether an alien falls within the reach of [an INA removal provision], we essentially would be inviting the parties to present any and all evidence bearing on an alien's conduct leading to the conviction.... Such an endeavor is inconsistent both with the streamlined adjudication that a deportation hearing is intended to provide and with the settled proposition that an Immigration Judge cannot adjudicate guilt or innocence.

*In re Pichardo,* 21 I & N Dec. 330, 335 (BIA 1996). By applying—without exception—*Taylor's* bar against looking beyond the record of conviction in order to consider the particular facts underlying an alien's prior offense, we are able to make the requisite determination respecting the nature of a prior conviction without resorting to the type of mini-trials we deem to be wholly inappropriate in this context.[7]

Until this point, we have consistently held that the strictures of *Taylor* apply to

---

7. That the BIA did not intend to modify its rule or otherwise create any precedential law in this case is evident from the fact that the appeal was "streamlined." The streamlining regulation authorizes a single BIA member to affirm the IJ's decision without opinion only if the BIA member determines, *inter alia,* that precedent controls the issue and the issue involves no novel factual situation, or that the issue is so insubstantial that full review is not warranted. 8 C.F.R. § 1003.1(a)(7)(ii); *see also Falcon Carriche v. Ashcroft,* 350 F.3d 845, 849 (9th Cir.2003). If the Board had, in fact, meant to create an exception to its standard method of determining whether a conviction qualifies as a predicate offense, this case would not have satisfied this prerequisite for streamlining, and Tokatly's petition would have instead received a full review from the Board. It is also evident from the above that the BIA not only erred in its decision on the merits, but erred in streamlining a case which was not insubstantial and in which the precedent was not sufficiently established that a single judge could simply affirm the IJ without opinion.

INA removal provisions—like the "crime of domestic violence" provision at issue here—in which removability is based on the nature of a defendant's prior offense.[8] Never have we divided the crime into segments, as the government urges here, and required that one part be proven by the record of conviction and the other by evidence adduced at the administrative hearing. To do so now would undermine the rationale underlying the rule.

Like all of the other removal provisions we have analyzed in accordance with the categorical and modified categorical approach, the plain language of the "crime of domestic violence" provision clearly bases deportability on the nature of the alien's conviction, rather than on the alien's actual conduct. We are required to determine whether Tokatly has been "*convicted* of a crime of domestic violence"—not whether he *in fact* committed such a crime. INA § 237(a)(2)(E)(i) (emphasis added). That the removable offense at issue is a "crime of *domestic* violence" in no way warrants a reversal of our fundamental method of determining whether an alien has been convicted of a removable offense under the

Act. The criteria for determining whether the violence is "domestic" are clearly established in the statute. Whether the necessary factors are present in a particular case may readily be determined by examining the record of conviction.

To adopt the government's approach would require us to look to "conduct" rather than "conviction." However, when Congress wants to make conduct the basis for removal, it does so specifically. *See, e.g.,* INA § 237(a)(2)(B)(ii) ("Any alien who is, or at any time after admission has been, a drug abuser or addict is deportable"); *see also In re Teixeira,* 21 I & N Dec. 316, 318 (BIA 1996) (noting the contrast between INA provisions which base deportability on actual conduct, and those that direct the inquiry to whether the alien stands "convicted under law" of certain offenses, and holding that a categorical and modified categorical approach applies where the removal provision directs the inquiry to the nature of the conviction); *In re Pichardo,* 21 I & N Dec. 330, 335 (BIA 1996) (same). There is no indication in section 237(a)(2)(E)(i) that a different approach should be used for determining whether a

---

8. *See, e.g. Ruiz–Morales v. Ashcroft,* 361 F.3d 1219 (9th Cir.2004) (applying *Taylor* to determine that an alien's conviction for a California crime of mayhem qualified as a "crime of violence" under the INA, making him subject to removal); *United States v. Pallares–Galan,* 359 F.3d 1088 (9th Cir.2004) (applying *Taylor's* modified categorical approach to determine that an alien's conviction under the California Annoy/Molest a Child statute did not constitute the "aggravated felony" conviction of "sexual abuse of a minor," and holding, on this basis, that he was not deportable); *Huerta–Guevara v. Ashcroft,* 321 F.3d 883 (9th Cir.2003) (applying *Taylor's* modified categorical approach to conclude that an alien's prior Arizona conviction for possession of a stolen motor vehicle did not qualify as a "theft offense" and was not an "aggravated felony" for which she could be removed); *United States v. Mendoza–Reyes,* 331 F.3d 1119 (9th Cir.2003) (applying *Taylor's* categorical ap-

proach to determine that a Washington offense of unlawful possession of a firearm qualified as an "aggravated felony" for purposes of the penalty provision of the INA governing the offense of illegal reentry after deportation); *Randhawa v. Ashcroft,* 298 F.3d 1148 (9th Cir.2002) (applying *Taylor* to determine that alien's prior conviction for stolen mail was categorically a "theft offense" and therefore an "aggravated felony," making him deportable); *Ye v. INS,* 214 F.3d 1128 (9th Cir.2000) (applying *Taylor* to determine that an alien's California offenses of vehicle burglary were not "burglaries" or "crimes of violence" under the INA, making him ineligible for removal); *Gonzalez–Alvarado v. INS,* 39 F.3d 245, 246 (9th Cir.1994) (applying *Taylor's* modified categorical approach to determine that an alien's prior conviction for incest under a Washington statute constituted a "crime of moral turpitude," rendering him deportable).

petitioner was convicted of an essential aspect of the deportable offense. That a definition is provided under the "crime of domestic violence" provision serves to allow us to determine from the record of conviction whether a removable offense was committed; it in no way suggests that we deviate from the *Taylor* methodology.[9] Thus, both the BIA and this court must analyze the "domestic" requirement of the conviction in the same manner as the rest of the offense—namely, by applying the categorical and modified categorical approach.

■ Applying *Taylor*, it is clear that the IJ was *not* entitled "to examine the facts behind the conviction" (except to the extent permitted by the modified categorical approach)[10] or to consider the testimony of the crime victim. Indeed, the IJ's examination of the victim provides an example of the very fact-finding process that both the courts and the Board have deemed inappropriate and sought to avoid by strict adherence to the categorical and modified categorical methodology. In this respect, the IJ's consideration of the vic-

tim's testimony violated "the settled proposition" that an Immigration Judge cannot adjudicate guilt or innocence. *Pichardo*, 21 I & N Dec. at 335.

The government argues that, regardless of our decision regarding the victim's testimony, we should make an exception to the narrow, carefully-circumscribed scope of *Taylor* inquiries so as to permit consideration of an alien's judicial admissions respecting the nature of his criminal conduct. We decline to modify this court's—and the Board's—strict rules against extra-record of conviction evidence in order to authorize use of an alien's admissions in determining removability under section 237(a)(2)(E)(i).[11]

In *In re Pichardo*, 21 I & N Dec. 330 (BIA 1996), the Board held, in unequivocal terms, that the Immigration Judge's reliance on the potential deportee's testimony to establish a requisite element of the removable offense was improper. *Id.* at 334–35. The Board explained:

> [T]he principle of not looking behind a record of conviction provides this Board with the only workable approach in

9. In *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir.2003), the Seventh Circuit held that the BIA was not entitled to look beyond the elements of the petitioner's state battery offense to his actual conduct in order to assess whether Flores' crime was an offense of "violence" under section 16 of Title 18, as incorporated in section 237(a)(2)(E)(i). Applying *Taylor, id.* at 670, the court determined that the prior conviction failed to constitute a "crime of violence" under the provision, and reversed the BIA's finding of removability on this basis.

In dicta and with little explanation, however, the court opined that the question whether the prior offense was a "crime of *domestic* violence" under the provision was governed by a "real-offense" approach which permitted the court's consideration of the defendant's actual conduct. *Id.* at 670–71 (internal citations omitted). *Flores* did not consider, however, even in its dicta, whether in looking beyond the elements to the actual conduct,

the agency or the court could disregard the limitations of the modified categorical approach and adduce evidence at an independent hearing on the relevant factual issues. However unclear the law may be in the Seventh Circuit, we hold to the view that an IJ is required to analyze the "domestic" requirement of the "conviction" in the same manner as the rest of the offense—namely, according to the procedure authorized by *Taylor*.

10. As noted *supra* at 616, resort can be made to such documents as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings.

11. Even if we were to hold otherwise, we seriously question the propriety of using testimony from a collateral proceeding regarding equitable relief for the purpose of a wholly separate determination regarding the legal question of removability.

cases where deportability is premised on the existence of a conviction ...

If we were to make an exception here and accept the respondent's testimony as proof of his deportability under [the removal provision], there would be no clear stopping point where this Board could limit the scope of seemingly dispositive but extrinsic evidence bearing on the respondent's deportability. We believe that the harm to the system induced by the consideration of such extrinsic evidence far out-weighs the beneficial effect of allowing it to form the evidentiary basis of a finding of deportability.

*Id.* at 335–36.

Similarly, in *Huerta–Guevara v. Ashcroft,* 321 F.3d 883, 888 (9th Cir.2003), we recently declined to consider a petitioner's judicial admissions respecting the actual conduct which underlay her prior offense—specifically, a ."description of her crime in the brief filed with the BIA"— even though the admissions would have served factually to establish the requisite element of the removal provision that the record of conviction did not. *Id.* at 888. Although we noted that the petitioner's submission was "as clear a statement of what happened as the factual basis for a guilty plea would be if set out in a plea agreement or colloquy," we nevertheless declined to expand our inquiry under the modified categorical approach to include "statements in a brief, or judicial admissions." *Id.* Specifically, because we did not have the petitioner's plea agreement in the record of conviction, *id.* at 887— and we could not therefore verify that the petitioner had actually *been convicted of* conduct involving the requisite intent element—we held that despite her own statements which proved that she had *in fact* acted with the requisite criminal intent,

the petitioner was not removable on the basis charged.

Here, it is undisputed by the government that the pertinent, victim-related testimony Tokatly offered during the second hearing in support of his application for ancillary relief from removal—"even if taken as a true account" of the underlying conduct that gave rise to his prior conviction—was *not* included in the "elements to which [he] pled guilty." *Cf. Huerta,* 321 F.3d at 888. Accordingly, following *Huerta,* and in accordance with the Board's decision in *Pichardo,* we decline to create the exception the government urges to the modified categorical approach.

Because the documentation in the record of conviction fails to establish that Tokatly's prior conviction was for acts that fall within the relevant statutory provision, the government has not met its burden of proof, and the conviction may not be used for purposes of removal. *See United States v. Franklin,* 235 F.3d 1165, 1170 (9th Cir.2000).

## CONCLUSION

We hold that the *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) categorical and modified categorical approach is applicable to section 237(a)(2)(E)(i) in its entirety. Applying *Taylor,* a court may not look beyond the record of conviction to determine whether an alien's crime was one of "violence," or whether the violence was "domestic" within the meaning of the provision. Accordingly, the IJ erred in relying on testimonial evidence outside the record of conviction, including the petitioner's own admissions regarding the "domestic" character of his relationship with the victim. Thus, Tokatly's Burglary and Kidnaping convictions, Or.Rev.Stat. §§ 164.225, 163.235, do not qualify as crimes of "domestic violence" under the categorical or

modified categorical approach. Accordingly, Tokatly is not removable on the basis charged.

PETITION GRANTED; ORDER OF REMOVAL VACATED.