**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARMANDO NAVARRO-LOPEZ,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 04-70345

Agency No.
A92-283-781

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 4, 2006—Pasadena, California

Filed July 31, 2006

Before: Harry Pregerson and Edward Leavy, Circuit Judges,
and Ralph R. Beistline,* District Judge.

Opinion by Judge Leavy;
Dissent by Judge Pregerson

---

*The Honorable Ralph R. Beistline, United States District Judge for the
District of Alaska, sitting by designation.

8519

## COUNSEL

James R. Patterson, Law Office of Lilia S. Velasquez, San Diego, California, for the petitioner.

Saul Greenstein and Daniel E. Goldman, U.S. Department of Justice, Washington, DC, for the respondent.

**OPINION**

LEAVY, Circuit Judge:

Armando Navarro-Lopez petitions for review of a final order of removal, arguing that the Board of Immigration Appeals (BIA) erred in summarily affirming the immigration judge's (IJ) determination that Navarro-Lopez's conviction under California Penal Code § 32 for accessory after the fact was a conviction involving a crime of moral turpitude. Based on this conviction, the BIA concluded that Navarro-Lopez was inadmissible and ineligible for cancellation of removal. We have jurisdiction, and we deny the petition for review.

**FACTS AND PRIOR PROCEEDINGS**

Navarro-Lopez is a native and citizen of Mexico who entered the United States in June 1984. On August 9, 1999, Navarro-Lopez pleaded guilty to a violation of Cal. Penal Code § 32, accessory after the fact, and was sentenced to 270 days in jail and three years probation. In February 2001, Navarro-Lopez traveled to Tijuana, Mexico. When he tried to re-enter the United States, he was denied entry and detained. Thereafter the Immigration and Naturalization Service (INS) filed an amended Notice to Appear (NTA) charging that he was inadmissible because he did not have valid entry documents under 8 U.S.C. § 1182(7)(A)(i)(I) and for having been convicted of a crime involving moral turpitude under 8 U.S.C. § 1182(2)(A)(i)(I). At his merits hearing Navarro-Lopez conceded the charge of inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I), but argued that his Cal. Penal Code § 32 conviction did not constitute a crime involving moral turpitude. The IJ determined that Navarro-Lopez's conviction of violating Cal. Penal Code § 32 constituted a crime involving moral turpitude under 8 U.S.C. § 1182(2)(A)(i)(I):

> It is a crime involving moral turpitude because a conviction under this provision does show conduct

contrary to the duty owed to society in general. His conviction was in contradiction of the enforcement of a state law relating to a felony. Furthermore, it involves knowledge that the individual that the respondent is harboring or aiding has committed such a felony, given the fact that it involves the knowledge that the principle has committed the felony and the individual is taking conduct, whether that be harboring or aiding. Such assistance to one known to have committed a felony is clearly contrary to the accepted rules owed between members of society.

This court agrees with the Services [sic] contention that the Board of Immigration Appeals addressed a similar crime of harboring and concealing a person from arrest in violation of 18 U.S.C. Sec. 1071. *Matter of Sloan*, 12 I&N Dec. 840 (BIA 1966).

The IJ also denied Navarro-Lopez's application for cancellation of removal because, based on his conviction, he did not have the requisite good moral character under 8 U.S.C. § 1229b(b) and because he had been convicted of a crime involving moral turpitude under 8 U.S.C. § 1229b(b)(1)(c). The IJ ordered Navarro-Lopez removed to Mexico. Navarro-Lopez timely appealed to the BIA, which summarily affirmed on December 24, 2003. He then timely filed this petition for review on January 22, 2004.

## JURISDICTION

We have jurisdiction to review the petition under 8 U.S.C. § 1252 as amended by § 106(a) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005). *See Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005). While we have no jurisdiction to review "any final order of removal against an alien who is removable

by reason of having committed a criminal offense," including a crime of moral turpitude, 8 U.S.C. §§ 1252(a)(2)(C), and 1227(a)(2)(A), we are not barred from hearing the constitutional claims or questions of law raised in Navarro-Lopez's petition. 8 U.S.C. § 1252(a)(2)(D). Whether Navarro-Lopez's conviction is a crime involving moral turpitude is a question of law. *See Notash*, 427 F.3d at 695-96.

We review de novo the question of whether a state statutory crime constitutes a crime involving moral turpitude. *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005).

## ANALYSIS

[1] Navarro-Lopez asserts that the IJ erred when he determined that a conviction for the offense of accessory after the fact under Cal. Penal Code § 32 constituted a crime involving moral turpitude and asks that his petition be remanded to the BIA for a grant of cancellation of removal. To qualify for cancellation of removal an alien must demonstrate, inter alia, that he has not been convicted of a crime of moral turpitude and that he has maintained good moral character for the "10 years immediately preceding the date" of the application. 8 U.S.C. § 1229(b)(1)(C) & (A)-(B). Under 8 U.S.C. § 1101(f)(3) no person may be found to have good moral character who has been convicted of a crime listed in 8 U.S.C. § 1182(a), which includes a crime involving moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). The IJ did not rely on facts other than Navarro-Lopez's conviction when he determined that Navarro-Lopez lacked good moral character. Thus, Navarro-Lopez's eligibility for cancellation of removal turns on whether a conviction under Cal. Penal Code § 32 constitutes a crime involving moral turpitude.

[2] To determine whether a conviction is for a crime involving moral turpitude, we apply the categorical and modified categorical approaches established by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). *Cuevas-*

*Gaspar*, 430 F.3d at 1017. We begin with the categorical approach and compare the elements of the statute of conviction to the definition of a crime involving moral turpitude and decide whether the full range of conduct encompassed by the criminal statute constitutes a crime of moral turpitude. *Id.* In assessing whether a crime involved moral turpitude, we consider the elements of the crime as set forth in the relevant statute, rather than the conduct of the alien that led to the conviction. *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994)(per curiam).

Cal. Penal Code § 32 (1999) provides:

> Every person who, after a felony has been committed, harbors, conceals, or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.

The crime of being an accessory after the fact has the following essential elements: (1) someone other than the person charged as an accessory, that is to say, a principal, must have committed a specific completed felony; (2) the accused must have harbored, concealed or aided the principal (3) with knowledge that the principal committed a felony; and (4) further, the hiding, concealing or harboring must be with specific intent that the principal may escape from arrest and trial. *People v. Prado*, 136 Cal. Rptr. 521, 523 (Cal. Ct. App. 1977).

**[3]** Thus, a conviction under § 32 requires knowing and active interference with the enforcement of the law and specific intent to help someone avoid prosecution. Under California law, "[t]his crime necessarily involves moral turpitude since it requires that a party has a specific intent to impede justice with knowledge that his actions permit a fugitive of the

law to remain at large." *In re Young*, 49 Cal. 3d 257, 264, 776 P.2d 1021, 1024(Cal. 1989).

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.

*Matter of Fualaau*, 21 I. & N. Dec. 477 (BIA 1996) (internal citations omitted); *see also Cuevas-Gaspar*, 430 F.3d at 1018.

"Concealment of crime has been condemned throughout our history." *Roberts v. United States*, 445 U.S. 552, 557 (1980). Applying this principle, the Eleventh Circuit in *Itani v. Ashcroft*, 298 F.3d 1213 (11th Cir. 2002), held that the federal offense of misprision of a felony[1] constitutes a crime of moral turpitude: "We conclude that misprision of a felony is a crime of moral turpitude because it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity." *Id.* at 1216; *see also Padilla v. Gonzales*, 397 F.3d 1016, 1020 (7th Cir. 2005) (state obstruction of justice conviction constitutes crime of moral turpitude because of making false statements and concealing criminal activity).

---

[1]The offense of misprision of a felony is defined as follows:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4.

**[4]** Similarly, because an accessory after the fact conviction under Cal. Penal Code § 32 requires a knowing, affirmative act to conceal a felony with the specific intent to hinder or avoid prosecution of the perpetrator, it is contrary to the duties owed society and constitutes a crime of moral turpitude.

PETITION DENIED.

---

PREGERSON, Circuit Judge, dissenting:

The majority's decision represents an unwarranted expansion of the definition of crimes involving moral turpitude and contravenes this circuit's precedent. The majority holds that a conviction under California Penal Code § 32 for accessory after the fact is categorically a crime involving moral turpitude, even though one could be convicted under that statute for acts as sympathetic as providing food or shelter to one's own child if you know the child has committed even the most minor felony. I therefore dissent.

Moral turpitude has been defined by this circuit as an "act of baseness or depravity contrary to accepted moral standards." *Grageda v. INS*, 12 F.3d 919, 921 (9th Cir. 1993); *see also id.* (further defining moral turpitude as conduct "so basically offensive to American ethics and accepted moral standards") (citations omitted). The BIA has defined a crime involving moral turpitude as "[a]n act of baseness, vileness, or depravity, in the private and social duties which a man owes to his fellow man or to society . . . [where the] fundamental inquiry [is]: Does the crime . . . in its nature imply personal depravity or baseness upon the part of its perpetrator?". *Matter of E—*, 2 I. & N. Dec. 134, 140 (BIA 1944, AG 1944). In a more vivid description, the Supreme Court defined moral turpitude as conduct

so far contrary to the moral law, as interpreted by the general moral sense of the community, that the offender is brought to public disgrace, is no longer generally respected, or is deprived of social recognition by good living persons . . . .

*Jordan v. De George*, 341 U.S. 223, 237 n.9 (1951) (citation omitted).

Under the categorical approach, we are confronted with the question whether *every* action that could lead to a conviction under California Penal Code § 32 fits the above definitions of moral turpitude. To say that all behavior that could result in a conviction for accessory after the fact "is so far contrary to the moral law . . . that the offender is brought to public disgrace" stretches that concept to the breaking point.

1. *The majority's rationale — that conduct underlying an accessory after the fact conviction runs contrary to the legal duties owed to society — is legally insufficient to support its view that a conviction under California Penal Code § 32 is a conviction of a crime involving moral turpitude.*

The majority holds that accessory after the fact is a crime that always involves moral turpitude because harboring, concealing, or aiding a person who has committed a felony with the intent that such person escape detention or prosecution runs contrary to the duties owed to society. Maj. Op. at 8526. I believe that this reasoning is flawed.

The majority is correct that concealment of a felony, along with other similar crimes, "has been condemned throughout our history . . . [and] remain[ ] a badge of irresponsible citizenship." *Roberts v. United States*, 445 U.S. 552, 557-58 (1980). In this sense, an accessory after the fact violates a duty owed to society to obey the law and not to impede the investigation of crimes. The majority's analysis is nonetheless

incomplete. Commission of *any* crime, by definition, runs contrary to *some* duty owed to society. If this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude. We certainly owe a duty to society not to destroy other's property, not to assault one another, and not to break and enter private property. Yet we have held that convictions for the above behavior do not categorically involve moral turpitude. *E.g.*, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1018 (9th Cir. 2005) (concluding that burglary with intent to commit a crime within the residence is not a categorical crime involving moral turpitude); *Carr v. INS*, 86 F.3d 949, 950-51 (9th Cir. 1996) (noting that assault with a deadly weapon is not necessarily a crime involving moral turpitude); *Rodriguez-Herrera v. INS*, 52 F.3d 238, 239-40 (9th Cir. 1995) (finding that "knowingly and maliciously caus[ing] physical damage to property of another in amount exceeding $250" is not a categorical crime involving moral turpitude).

What the majority's analysis ignores is the second crucial element of the definition of crime involving moral turpitude: that the crime involve some level of depravity or baseness "so far contrary to the moral law" that it gives rise to moral outrage. *Jordan,* 341 U.S. at 237 n.9.[1] This court has strictly required this additional element of depravity. "Crimes of moral turpitude are of basically two types, those involving fraud and those involving *grave* acts of baseness or depravity." *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005) (emphasis added). The majority holds that accessory after the

---

[1]The majority's citation to *In re Young*, 776 P.2d 1021 (Cal. 1989), a case that involved attorney discipline, is inapposite here. Moral turpitude, in that setting, is defined according to whether the crime bears on the attorney's ability to practice law and is calibrated to maintain the public's confidence in the legal profession. *See In re Lesansky*, 25 Cal. 4th 11, 16 (Cal. 2001). Obviously, an attorney's conviction for helping his client escape the reaches of justice has the effect of undermining public confidence in the legal profession. That definition of moral turpitude is not in play here, and provides no support for the majority's holding.

fact is a crime involving moral turpitude without making any effort to explain how accessory fits into either of the above categories. The majority's opinion is thus contrary to this circuit's precedents and ignores key provisions of this circuit's and the BIA's definition of moral turpitude.[2]

2. *Accessory after the fact does not always involve "grave acts of baseness or depravity."*

Had the majority considered this circuit's full definition of moral turpitude, it could not, I believe, have found that accessory after the fact *always* involves "grave acts of baseness or depravity." Determining whether a crime is base or depraved is a subjective decision about our society's values. In *Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003), for example, we found that aggravated driving under the influence was not a crime involving moral turpitude. We noted that one could be convicted under the Arizona aggravated DUI statute for sitting in one's car in one's driveway with an open can of beer and with keys in the ignition. We found "it difficult to believe that our society holds [such] conduct in one's own backyard to be 'inherently base, vile or depraved and contrary to the accepted rules of morality.' " *Id.* at 1119. It is similarly difficult to believe that *all* convictions for accessory after the fact involve conduct that would be met

---

[2]The Eleventh Circuit's opinion in *Itani v. Ashcroft*, 298 F.3d 1213 (11th Cir. 2002), relied on by the majority, is also problematic. In *Itani*, the court found that misprision of a felony was a crime involving moral turpitude, recognizing that members of society have a duty to report felonies to the authorities, and that failure to do so is "not looked upon with favor" and is a "badge of irresponsible citizenship." *Itani*, 298 F.3d at 1216. It therefore concluded that misprision of a felony was a crime involving moral turpitude, because it "runs contrary to the accepted societal duties," without any consideration of whether misprision of a felony was "base or depraved." *Id.* That the Eleventh Circuit has ignored key provisions of the definition of moral turpitude does not give us license to do so. Instead, we should follow our own precedents, which clearly require some showing that the crime in question involves "grave acts of baseness or depravity." *Carty*, 395 F.3d at 1083.

with "moral outrage" in our society. By all relevant benchmarks, accessory after the fact is not always a crime involving moral turpitude.

One benchmark is the level of punishment the crime receives. A conviction for accessory after the fact is punishable either as a felony or as a misdemeanor. *See* Cal. Penal Code § 33 (stating that an accessory is punishable either by a fine, or by imprisonment in the state prison, or in a county jail not exceeding one year); Cal. Penal Code § 17(b) (stating that a crime punishable "by imprisonment in the state prison or by fine or imprisonment in the county jail" can be either a felony or a misdemeanor depending on the court's ultimate sentence). Moral turpitude does not necessarily depend on whether the crime is a felony or misdemeanor, *Matter of Short*, 20 I. & N. Dec. 136, 139 (BIA 1989); nonetheless, it is noteworthy that California's accessory after the fact statute calls for punishment ranging from a mere fine to imprisonment.

Second, the broad range of acts proscribed under this section do not *all* give rise to "moral outrage." "*Any* kind of overt or affirmative assistance to a known felon" can be the basis of a conviction under California Penal Code § 32. *People v. Duty*, 74 Cal. Rptr. 606, 609 (Cal. Ct. App. 1969) (emphasis added). The action of harboring a felon can be as simple as providing food or shelter to one who has committed a felony. *See United States v. Hill*, 279 F.3d 731, 736 (9th Cir. 2002). Yet such conduct does not entail cruelty or violence toward any person, nor does it involve the destruction of another's property. Actions that are more harmful than the conduct underlying an accessory after the fact conviction have been deemed not to categorically involve moral turpitude. *See, e.g., Cuevas-Gaspar*, 430 F.3d at 1018 (concluding that burglary with intent to commit a crime within the residence is not a categorical crime involving moral turpitude; breaking and entering into another's residence is not, "in and of itself 'base, vile, or depraved' "); *Carr*, 86 F.3d at 950-51 (noting that

assault with a deadly weapon is not categorically a crime involving moral turpitude); *Rodriguez-Herrera,* 52 F.3d at 239-40 (holding that "knowingly and maliciously caus[ing] physical damage to property of another in amount exceeding $250" did not rise to level of depravity that would qualify it as a categorical crime involving moral turpitude). Under the majority's logic, then, we would reach the absurd result that a person who committed an assault with a deadly weapon has not committed a categorical crime involving moral turpitude, but a person who harbored the attacker from capture by the police had necessarily committed a crime involving moral turpitude. On the basis of our precedents, I simply cannot conclude that *every* act of assistance to a felon can be described as "base or depraved."

Moreover, while a conviction under California's accessory after the fact statute requires the specific intent that the principal escape detention or prosecution, such a conviction does not necessarily evidence a "vicious motive or corrupt mind." *See Matter of E—*, 2 I. & N. Dec. at 140 ("A test in determining what crimes involve moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind."); *see also Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993) (finding that intent to commit a crime is not the same as the "evil intent" required to support a finding of moral turpitude). The motivation underlying accessory crimes is often protection of a friend or of a family member during a time of trouble, and such actions, while criminal, do not necessarily evidence moral depravity.

Indeed, many states, including one in this circuit, have recognized the difficult choices facing the family members of an escaping felon and have exempted family members from accessory after the fact liability. *See* Nev. Rev. Stat. § 195.030. California, however, has no such explicit exception. *See* Wayne R. LaFave, Substantive Criminal Law § 13.6(a), at 408 (2d ed. 2003) (listing thirteen states, not including California, that have such protection). Thus, in Cali-

fornia, a wife could be convicted of "harboring" her husband, or a father or mother of harboring a son or a daughter. *See Hill*, 279 F.3d at 736 (upholding conviction against a wife under the federal "harboring" statute). I refuse to accept that our society would call the action of harboring one's son or daughter a crime that is particularly based or depraved, especially when many states do not even consider such conduct criminal. Moreover, the majority's rule would convert conduct that is not criminal in one of our circuit's jurisdictions into a crime involving moral turpitude for immigration purposes. The immigration consequences of one's actions should not depend on which state within our circuit one lives in.

Conduct underlying an accessory conviction does not necessarily evidence baseness or depravity. I do not believe that Congress intended to make all aliens inadmissible for the crime of accessory after the fact. Accordingly, I would find that a conviction for California Penal Code § 32 is not a categorical crime involving moral turpitude.

3. *Under the modified categorical approach, the record of conviction does not reveal the factual basis underlying Navarro-Lopez's conviction.*

Were we to reach the modified categorical approach, we would examine whether the limited documents that make up the record of conviction — i.e, "the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings" — establish that the conviction is one that involves moral turpitude. *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004). In this case, there is no evidence in the record of conviction that demonstrates the factual basis for Navarro-Lopez's conviction. The accessory after the fact charge was handwritten on the bottom of the information, which states, simply, "Count 5 — PC 32 — Armando Navarro." The other charges listed on the information — dropped in accordance with the plea agreement — cannot be considered for purposes of determining whether the

crime to which Navarro-Lopez pleaded was one that involved moral turpitude. *See Matter of M—*, 2 I. & N. Dec. 525, 526 (BIA 1946) (holding that where an indictment contains multiple charges and the alien pleaded guilty to a lesser offense, the allegations in the indictment that pertain only to the greater offense must be disregarded entirely); *see also Shepard v. United States*, 544 U.S. 13, 24 (2005) (under the modified categorical approach, the court can only consider facts that are *necessarily* admitted in the plea). None of the other documents in the record of conviction establish the factual basis for Navarro-Lopez's plea. Accordingly, under the modified categorical approach, I would hold that Navarro-Lopez's conviction is not a crime involving moral turpitude, and that Navarro-Lopez was not inadmissible on this basis.

Navarro-Lopez is married to a United States citizen, has two United States citizen children, and has lived in the United States since 1984. He committed a relatively minor offense, certainly not one that Congress intended to result in inadmissibility or, more to the point in this case, make him ineligible for cancellation of removal. On this basis, I would grant the petition.