**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANUEL OLIVAS-MOTTA, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 10-72459 Agency No. A021-179-705 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 13, 2011—San Francisco, California

Filed May 17, 2013

Before: Proctor Hug, Jr., Andrew J. Kleinfeld,
and William A. Fletcher, Circuit Judges.

Opinion by Judge Fletcher
Concurrence by Judge Kleinfeld

## SUMMARY[*]

### Immigration

The panel granted Manuel Olivas-Motta's petition for review of the Board of Immigration Appeals' decision concluding, on the basis of police reports, that his conviction for endangerment under Arizona law constituted a crime involving moral turpitude.

The panel held that a "crime involving moral turpitude" (CIMT) is a generic crime whose description is complete unto itself, such that "involving moral turpitude" is an element of the crime and an Immigration Judge is limited to the record of conviction to determine whether an alien was "convicted of" a CIMT. The panel held that the Attorney General wrongly decided, in his published precedential opinion *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), that an IJ may rely on evidence outside the record of conviction to determine whether a petitioner has been convicted of a CIMT.

Judge Kleinfeld, concurring in the result, disagreed with the majority's wholesale rejection of deference to the *Matter of Silva-Trevino* opinion, but would not address whether it merits *Chevron* deference because the BIA's reliance on the police report in this case was mistaken. Judge Kleinfeld would also find that *Matter of Silva-Trevino*, reasonably construed, is not arbitrary or capricious, but that it was misapplied in this case.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kara L. Hartzler (argued), Florence, Arizona, for Petitioner.

Gregory Darrell Mack (argued), Senior Litigation Counsel, United States Department of Justice, Washington, D.C., for Respondent.

Peter L. Markowitz, Benjamin N. Cardozo School of Law Immigration Justice Clinic, New York, New York, for Amici Curiae Immigrant Defense Project, National Immigration Project of the National Lawyers Guild, Immigrant Legal Resource Center, U.C. Davis Immigration Law Clinic, and Immigration Justice Clinic of the Benjamin N. Cardozo School of Law.

---

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Manuel Olivas-Motta is a lawful permanent resident charged with removal under 8 U.S.C. § 1227(a)(2)(A)(ii) based on his alleged "conviction of" two crimes involving moral turpitude ("CIMTs"). Petitioner concedes that the first conviction was for a CIMT. He contends that the second was not.

The Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") concluded that the second conviction was for a CIMT, relying on police reports to determine the nature of the conviction. The Attorney General held in *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), that an IJ may rely on evidence outside the record of conviction to

determine whether a petitioner has been "convicted of" a CIMT. We join the Third, Fourth, and Eleventh Circuits in holding that *Silva-Trevino* was wrongly decided. We hold that an IJ and the BIA are confined to the record of conviction in determining whether an alien has been convicted of a CIMT.

## I. Background

Olivas-Motta was brought to the United States by his parents when he was ten days old. At the time of his hearing before the IJ he was thirty-three years old, married, and a lawful permanent resident. He was charged with removal under 8 U.S.C. § 1227(a)(2)(A)(ii), which provides that an alien who has been "convicted of two or more crimes involving moral turpitude . . . is deportable."

In 2003, Olivas-Motta was convicted of facilitation of unlawful possession of marijuana under Arizona law. Ariz. Rev. Stat. §§ 13-1004, 13-3405. He concedes that this was a conviction of a CIMT. In 2007, he pled guilty to "endangerment" under Arizona law. Arizona's endangerment statute provides:

> A. A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury.
>
> B. Endangerment involving a substantial risk of imminent death is a class 6 felony. In all other cases, it is a class 1 misdemeanor.

Ariz. Rev. Stat. § 13-1201.  Olivas-Motta contends that his conviction of endangerment was not a conviction of a CIMT.

At Olivas-Motta's removal hearing before the IJ, the government put into evidence the charging document and the written plea agreement for his endangerment conviction. Neither the charging document nor the plea agreement provides information about Olivas-Motta's underlying conduct.  The plea agreement states only that Olivas-Motta "committed endangerment by recklessly endangering another person with a substantial risk of imminent death," and that he was pleading guilty to a class 6 felony.  The government also put into evidence before the IJ three police reports containing information about Olivas-Motta's conduct.  Relying on the police reports pursuant to *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), the IJ concluded that Olivas-Motta had been "convicted of" a CIMT and was therefore removable. She denied cancellation of removal.

The BIA dismissed Olivas-Motta's appeal.  It relied on the police reports pursuant to *Silva-Trevino* to conclude that Olivas-Mota had been convicted of a CIMT.  Olivas-Motta petitioned for review.

## II.  Jurisdiction and Standard of Review

We have jurisdiction to review questions of law in a petition for review of a removal order.  8 U.S.C. § 1252(a)(2)(D).  *Latter-Singh v. Holder*, 668 F.3d 1156, 1159 (9th Cir. 2012).  Whether a conviction is for a CIMT is a question of law.  *Id.*  We review questions of law de novo. *Romero-Mendoza v. Holder*, 665 F.3d 1105, 1107 (9th Cir. 2011).

## III. Discussion

We evaluate the Attorney General's decision in *Silva-Trevino* under the familiar framework of *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984). When we review an agency's construction of a statute that it administers, the first step under *Chevron* is to determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. "If the intent of Congress is clear, that is the end of the matter . . . ." *Id.* In that event, courts and agencies alike "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If the intent of Congress is unclear, we move to the next step, which is to determine whether the agency's interpretation of the text "is based on a permissible construction of the statute." *Id.* at 843. If the agency's interpretation is based on a permissible construction, a court must give deference to that interpretation.

In *Silva-Trevino*, the Attorney General interpreted two provisions of the Immigration and Naturalization Act ("INA"), one dealing with inadmissibility and the other dealing with removability. In both provisions, a criterion for inadmissibility or removability is "conviction of" one or more CIMTs. The admissibility provision states:

> [A]ny alien *convicted of*, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a *crime involving moral turpitude* . . . is inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i)(I) (emphasis added). The removability provision states:

(i) Any alien who . . . is *convicted of* a *crime involving moral turpitude* committed within five years (or 10 years in the case of an alien provided lawful permanent resident status . . . ) after the date of admission, and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.

(ii) . . . Any alien who at any time after admission is *convicted of* two or more *crimes involving moral turpitude* . . . is deportable.

8 U.S.C. § 1227(a)(2)(A)(i–ii) (emphasis added).

The Attorney General concluded that the statutory language is ambiguous. He wrote:

This opinion begins, as it must, with the statutory text. The Act refers to "moral turpitude" in two separate provisions [quoting 8 U.S.C. §§ 1182(a)(2)(A)(ii)(I) and 1127(a)(2)(A)(i)].

*The statute does not define the term "crime involving moral turpitude." It is also silent on the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude.* To the extent it suggests a method, the text actually cuts in different directions. Some statutory language — for example, use of the phrase "convicted of" rather than "committed" — suggests that the

relevant inquiry should be categorical and focus on whether moral turpitude inheres in the statutory elements required for conviction rather than in the particularized facts of the alien's crime. Section [1182](a)(2)(A)(i)(I). Other language — for example, the use of the word "involving" and the reference in section [1182](a)(2)(A)(i)(I) to aliens who admit "committing" certain "acts" — seems to call for, or at least allow, inquiry into the particularized facts of the crime.

*Faced with this ambiguity*, the Board and the Federal courts have long taken the view that judges should begin by engaging in some sort of "categorical" inquiry to determine whether moral turpitude "necessarily inheres" in a conviction under a particular State or Federal criminal statute. To date, however, the Department has not adopted a preferred methodology for conducting that categorical inquiry, and the Board has chosen instead to make such determinations in accordance with the law of the circuit in which an alien's case arises.

*Silva-Trevino*, 24 I. & N. at 692–93 (emphasis added) (some citations omitted).

Later in his opinion, the Attorney General wrote:

[T]he documents generally considered part of the formal record of conviction typically focus only on the charging elements of a

specific criminal offense. *But moral turpitude is not an element of an offense.* And although in many, if not most, cases (for example, cases in which proof of fraudulent intent is required for conviction), examination of the alien's record of conviction may establish that the alien was in fact convicted of a crime involving moral turpitude, there are other cases (such as the instant one) in which an examination of the formal record by itself does not yield an answer to the question. To limit the information available to immigration judges in such cases means that they will be unable to determine whether an alien's crime actually "involv[ed]" moral turpitude.

This restriction is hard to square with the text of the Act. *The relevant provisions contemplate a finding that the particular alien did or did not commit a crime involving moral turpitude before immigration penalties are or are not applied. Section [1182](a)(2)(A)(i)(I),* the inadmissibility provision at issue in this case, refers to "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude." *Section [1227's]* removability provisions similarly pertain only to "[a]ny alien who is convicted of a crime involving moral turpitude" under certain enumerated circumstances, one of which relates to the alien's date of admission — a fact that would not typically be reflected in a criminal record

of conviction.    To impose evidentiary limitations with the result that immigration penalties under section [1182](a) or section [1227] apply to aliens whose crimes did *not* involve moral turpitude, or with the result that aliens whose crimes *did* involve moral turpitude escape those penalties, is in tension with the text of those sections.

*Id.* at 699–700 (first emphases added) (some citations omitted).

Based on this analysis, the Attorney General concluded that an IJ may consult evidence outside the record of conviction in determining whether an alien has been "convicted of" a CIMT. *Silva-Trevino* establishes a three-step analysis. At the first step, applying *Taylor v. United States*, 495 U.S. 575, 602 (1990), the IJ determines whether the crime of conviction is categorically a CIMT. *Silva-Trevino*, 24 I. & N. at 690. If the crime is not categorically a CIMT, the IJ moves to the next step. At the second step, applying both *Taylor*, 495 U.S. at 602, and *Shepard v. United States*, 544 U.S. 13 (2005), the IJ determines under the modified categorical approach whether the crime is a CIMT. The IJ may consider the "record of conviction" including "documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea and the plea transcript." *Silva-Trevino*, 24 I. & N. at 690. If the crime is not a CIMT under the modified categorical approach, the IJ moves to the final step. At this third step, the IJ may consider evidence outside the record of conviction. In the words of *Silva-Trevino*, "[w]hen the record of conviction is inconclusive, judges may, to the extent they deem it

necessary and appropriate, consider evidence beyond the formal record of conviction." *Id.*

We disagree with the Attorney General. There are three critical points in his analysis. The first and second are his definitions of "crime involving moral turpitude" and "convicted of." The third is his conclusion that "moral turpitude" is not an element of "an offense." We take these points in turn.

First, the Attorney General clarified the substantive definition of the term "crime involving moral turpitude." But the Attorney General's clarification is irrelevant to the question whether evidence outside the record of conviction can be used to determine whether an alien has been "convicted of" a CIMT. The term CIMT is famously ambiguous. *See*, *e.g.*, *Matter of Short*, 20 I. & N. Dec. 136, 139 (BIA 1989) (referring to the term as a "nebulous concept"). The Attorney General provided a distillation of earlier decisions defining a CIMT:

> [T]his opinion rearticulates the Department's definition of the term [CIMT] in a manner that responds specifically to the judicial criticism. . . . [T]his opinion makes clear that, to qualify as a crime involving moral turpitude for purposes of the Act, a crime must involve both reprehensible conduct and some degree of scienter, whether specific intent, deliberateness, willfulness, or

> recklessness. This definition rearticulates with greater clarity the definition that the Board (and many courts) have in fact long applied.

*Silva-Trevino*, 24 I. & N. Dec. at 689 n.1. This distillation clarified to some degree the substantive definition of a CIMT. But the clarification of the substantive definition did nothing to clarify the procedures that an IJ may use, or, in the Attorney General's words, to clarify "the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude." *Id.* at 693.

To state the obvious, substance and procedure are not the same thing. There is nothing in the substantive definition of a CIMT, in either the BIA's definitions or the Attorney General's distillation, that permits an IJ to use a different procedure than it uses for other crimes in determining whether an alien has been convicted of such a crime. We agree with the Fourth Circuit, which addressed precisely this point:

> At issue . . . is not what conduct or statutory offense qualifies as a crime involving moral turpitude, but rather what language in the moral turpitude statute informs an adjudicator of the procedure for determining whether a particular conviction qualifies as a crime involving moral turpitude. [The government] conflates these concepts and relies on the asserted ambiguity inherent in the phrase "crime involving moral

turpitude" to justify deference to the Attorney General's three-step procedural framework.

*These two concepts, however, require distinct inquiries.*

*Prudencio v. Holder*, 669 F.3d 472, 480 (4th Cir. 2012) (emphasis added).

Second, the Attorney General provided a new, and erroneous, definition of "convicted of" that allows an IJ not only to consider the crimes of which an alien has been convicted, but also to consider crimes he may have committed but of which he was not convicted. In the second long passage quoted above, the Attorney General allowed the IJ to look outside the record of conviction for evidence of CIMTs an alien may have committed as part of his determination whether an alien has been "convicted of" a CIMT. The Attorney General wrote, "The relevant provisions contemplate a finding that the particular alien did or did not *commit a crime* involving moral turpitude before immigration penalties are or are not applied." *Silva-Trevino*, 24 I. & N. Dec. at 699 (emphasis added). The Attorney General cited § 1182(a)(2)(A)(i)(I) and § 1227, even though § 1227 does not refer to "commission" of crimes that constitute CIMTs. Rather, § 1227 refers only to "conviction of" CIMTs.

The Attorney General's new definition conflicts with a clear and long-established definition of "conviction." The INA provides, except in cases where an adjudication of guilt has been withheld, that "'conviction' means, with respect to an alien, a formal judgment of guilt of the alien . . . ." 8 U.S.C. § 1101(a)(48)(A). The INA specifies what

documents an adjudicator may consult as proof of a conviction. *See id.* at § 1229a(c)(3)(B) ("[A]ny of the following documents or records . . . shall constitute proof of a criminal conviction: [specifying documents constituting the record of conviction].").  Under this definition, an alien has been "convicted of" only those acts that form the basis for the conviction, as shown by the record of his conviction.  An alien has not been "convicted of" acts that he may have committed but that do not form the basis for the conviction.

The Attorney General's analysis in *Silva-Trevino* does nothing to cast doubt on the validity of this well-established definition.  He wrote that the "use of the word '*involving*' and the reference in section [1182](a)(2)(A)(i)(I) to aliens who admit '*committing*' *certain* '*acts*' . . . allow[s] inquiry into the particularized facts of the crime." *Silva-Trevino*, 24 I. & N. Dec. at 693 (emphasis added).  But he misunderstood the plain meaning and context of the words he invoked.  The word "involving" is embedded in the substantive term "crime involving moral turpitude," and it gives meaning to that term. It provides no help in defining the phrase "convicted of."  Nor does the phrase "admits committing" provide help.  The INA provides that an alien who has been "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude" is inadmissible.  8 U.S.C. § 1182(a)(2)(A)(i)(I) (emphasis added).  "Convicted of" and "admits committing" are separate phrases with separate meanings.  Under 8 U.S.C. § 1182(a)(2)(A)(i)(I), an alien is inadmissible if he has been convicted of a CIMT, *or* if he admits to having committed acts that constitute a CIMT. Under § 1227(a)(2)(A)(i–ii), an alien is deportable only if he has been "convicted of" CIMTs.

In *Tokatly v. Ashcroft*, 371 F.3d 613 (9th Cir. 2004), we explicitly rejected the argument that we may look to conduct that an alien "committed" to determine the acts he has been "convicted of." We wrote:

> Like all of the other removal provisions we have analyzed in accordance with the categorical and modified categorical approach, the plain language of the "crime of domestic violence" provision clearly bases deportability on the nature of the alien's conviction, rather than on the alien's actual conduct. We are required to determine whether Tokatly has been "*convicted of* a crime of domestic violence" — not whether he in fact *committed* such a crime. . . .
>
> To adopt the government's approach would require us to look to "conduct" rather than "conviction." . . . [W]hen Congress wants to make conduct the basis for removal it does so specifically.

*Id.* at 622.

Third, the Attorney General concluded that "moral turpitude" is not "an element of an offense." Because in his view moral turpitude is not an element of "an offense," it is not an element of the federal generic CIMT. Therefore, in the Attorney General's view, an IJ is not confined to the record of conviction in determining whether an alien has been convicted of a crime involving moral turpitude. *Silva-Trevino*, 24 I. & N. Dec. at 699–700. The Attorney General is mistaken in his conclusion that "moral turpitude" is not "an

element" of a CIMT. This may be seen from an analysis of the Supreme Court's decision in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009).

In determining the removability of Nijhawan under 8 U.S.C. § 1227(a)(2)(A)(iii), the IJ was required to determine whether he had been convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43). *Nijhawan*, 129 S. Ct. at 2297. The Court in *Nijhawan* divided generic felony descriptions into two categories.

In the first category are descriptions of generic crimes that are complete unto themselves. *Id.* at 2298. In the second category are descriptions of generic crimes with an added description of circumstances of the crimes. *Id.* Nijhawan had been convicted of an aggravated felony consisting of an offense involving fraud or deceit, with a specified loss amount. The question before the Court was whether the amount of loss was an element of the generic aggravated felony, in which case the IJ could consider only evidence in the record of conviction, or whether the amount of loss was merely a circumstance of some generic felonies involving "fraud or deceit," in which case the IJ could consider evidence outside the record of conviction to determine whether that circumstance existed. *Id.* at 2298–99. The Court gave examples in each group.

An example in the first category, taken from the Armed Career Criminal Act, is a crime that "*involves conduct* that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added); *Nijhawan*, 129 S. Ct. at 2300. The Court wrote that this statutory description "refers to crimes as generically defined." 129 S. Ct. at 2300 (citing *James v. United States*, 550 U.S.

192, 202 (2007)). Other examples in the first group are some of the aggravated felonies described in 8 U.S.C. § 1101(a)(43), including "murder, rape, or sexual abuse of a minor," § 1101(a)(43)(A), "illicit trafficking in a controlled substance," § 1101(a)(43)(B), and "illicit trafficking in firearms or destructive devices," § 1101(a)(43)(C). *See Nijhawan*, 129 S. Ct. at 2300.

Examples in the second category include some of the other aggravated felonies described in § 1101(a)(43). One example is "'falsely making, forging, counterfeiting, mutilating, or altering a passport,' . . . '*except in the case of a first offense for which the alien . . . committed the offense for the purpose of assisting . . . the alien's spouse, child or parent . . . to violate a provision of this chapter.*'" *Id.* (quoting 8 U.S.C. § 1101(a)(43)(P)) (emphasis by the Court) (first omission added). Another example is "'offense[s] . . . described in section 2421, 2422, or 2423 of title 18 (relating to transportation for the purpose of prostitution) *if committed for commercial advantage.*'" *Id.* at 2301 (quoting 8 U.S.C. § 1101(a)(43)(K)(ii)) (emphasis and omission by the Court). A third example is "an offense 'described in section 7201 of title 26 (related to tax evasion) *in which the revenue loss to the Government exceeds $10,000.*'" *Id.* at 2301 (quoting 8 U.S.C. § 1101(a)(43)(M)(ii)) (emphasis by the Court). According to the Court, the non-italicized language in these three examples describes generic crimes, and the italicized language describes circumstances rather than elements of the crimes. *Id.* at 2301–02.

The crime at issue in *Nijhawan* was "an offense that . . . involves fraud or deceit *in which the loss to the victim or victims exceeds $10,000.*" *Id.* (quoting 8 U.S.C. § 1101(a)(43)(M)(i)) (emphasis added) (omission by the

Court). The Court concluded that the generic felony was an offense that involves fraud or deceit, and that the elements of the generic crime were contained in that description. *Id.* The amount of loss was a circumstance rather than an element of the crime. Because the loss amount was a circumstance rather than an element, the IJ could consider evidence outside the record of conviction to determine whether that circumstance existed. *Id.* at 2301–03.

This understanding of *Nijhawan* was confirmed in *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010). In considering whether Carachuri-Rosendo was eligible for cancellation of removal, the IJ had to decide whether the state-law crime of which he had been convicted was the aggravated felony of "illicit trafficking" under § 1101(a)(43)(B). *Id.* at 2580–81. The Court held that uncharged conduct could not be considered in determining whether Carachuri-Rosendo had been convicted of "illicit trafficking." *Id.* at 2589. In rejecting the government's argument that the IJ could look at uncharged conduct, the Court wrote:

> [M]ost fundamentally, the Government's position ignores the text of the INA, which limits the Attorney General's cancellation power only when, *inter alia*, a noncitizen "has . . . been *convicted* of a[n] aggravated felony." The text thus indicates that we are to look to the conviction itself as our starting place, not to what might have been or could have been charged.

*Id.* at 2586 (alteration and emphasis in original). The Court distinguished the crime in *Nijhawan*, noting that Nijhawan

had been convicted of a generic felony "involv[ing] fraud or deceit," and that the loss amount was not an element of the crime. It wrote:

> [U]nlike the instant case, there was no debate in *Nijhawan* over whether the petitioner actually had been "convicted" of fraud; we only considered how to calculate the amount of loss once a conviction for a particular category of aggravated felony has occurred.

*Id.* at 2586–87 n.11.

Applying the analysis of *Nijhawan* to the question before us, the question is whether the term "crime involving moral turpitude" contains only a description of the elements of the generic crime, or whether the words "involving moral turpitude" in that term describe a circumstance of the crime. If the former, an IJ is confined to the record of conviction to determine whether an alien has been convicted of the crime. If the latter, an IJ may go beyond the record of conviction to determine if that circumstance existed.

An application of *Nijhawan* to CIMTs begins with a recognition that a CIMT is a generic crime rather than a particular crime that has been charged in an individual case. So far as we are aware, no state has a particular crime called "crime involving moral turpitude." The Attorney General is therefore correct in observing that moral turpitude is not "an element of *an* offense" if, by "offense" the Attorney General means a particular crime rather than the categorical offense of CIMT. *Silva-Trevino*, 24 I. & N. Dec. at 699 (emphasis added). However, the Attorney General's observation is irrelevant to an analysis of a generic crime such as a CIMT.

With respect to the generic crime of "crime involving moral turpitude," moral turpitude is an element of that crime. For two reasons, *Nijhawan* compels that conclusion.

First, contrary to the suggestion of the Attorney General, use of the word "involving" in the description of a CIMT is entirely consistent with "moral turpitude" being an element of the generic crime of CIMT. *See Silva-Trevino*, 24 I. & N. Dec. at 693 ("Other language — for example, use of the word 'involving' . . . — seems to call for, or at least allow, inquiry into the particularized facts of the crime."). The Court in *Nijhawan* gave, as one example of a generic crime whose description contained an element of that crime, a crime punishable by imprisonment of more than a year that "*involves* conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added); *see also Nijhawan*, 129 S. Ct. at 2300 (citing *James v. United States*, 550 U.S. 192, 202 (2007)). Further, as to the crime actually at issue in *Nijhawan*, the Court held that the underlying generic crime was "an offense that . . . *involves* fraud or deceit," and that "fraud or deceit" were elements of the offense. *Nijhawan*, 129 S. Ct. at 2301 (quoting 8 U.S.C. § 1101(a)(43)(M)(ii)) (emphasis added).

Second, there is no separately described generic crime for which "involving moral turpitude" is a circumstance. In each of the examples in *Nijhawan* in which there was a circumstance that could be proved by evidence outside the record of conviction, there was a separately defined crime to which a description of the circumstance had been added. Those crimes were "falsely making, forging, counterfeiting, mutilating, or altering a passport"; "offense[s] . . . described in section 2421, 2422, or 2423 of title 18 (relating to transportation for the purpose of prostitution)"; and an

"offense 'described in section 7201 of title 26 (related to tax evasion).'" *Id.* at 2301–02. In striking contrast, there is no separately described crime to which "involving moral turpitude" is added as a circumstance. If one eliminates the phrase "involving moral turpitude" from the phrase "crime involving moral turpitude," there is no separately defined crime. There is only the single word "crime," covering the entire universe of crime. The words "involving moral turpitude" are thus integral to the description of the generic crime of CIMT and constitute an element of that generic crime.

Three of our sister circuits agree that *Silva-Trevino* was wrongly decided. In *Jean-Louis v. Attorney Gen.*, 582 F.3d 462 (3d Cir. 2009), the Third Circuit rejected the argument that the word "involving" in the phrase "crime involving moral turpitude" permits consideration of evidence beyond the record of conviction. The court concluded that the entire phrase "crime involving moral turpitude" is a "term of art" describing a generic crime. 582 F.3d at 477. Relying in part on our decision in *Tokatly*, the Third Circuit also rejected the Attorney General's argument that the use of "convicted of" and "committed" in § 1182(a)(2)(A)(i)(I), the inadmissibility provision, makes the statute ambiguous. It wrote:

> It could not be clearer from the text of the statute — which defines "conviction" as a "formal judgment of guilt," and which explicitly limits the inquiry to the record of conviction or comparable judicial record evidence — that the CIMT determination focuses on the *crime* of which the alien was *convicted* — not the specific *acts* that the alien may have *committed*.

*Id.* at 474 (footnote omitted).  The court concluded:

> The ambiguity that the Attorney General
> perceives in the INA is an ambiguity of his
> own making, not grounded in the text of the
> statute, and certainly not grounded in the
> BIA's own rulings or the jurisprudence of
> courts of appeals going back for over a
> century.

*Id.* at 473.

Two other circuits have agreed with the Third Circuit's
decision in *Jean-Louis*.  In *Prudencio v. Holder*, 669 F.3d at
482, the Fourth Circuit wrote:

> [W]e conclude that the plain language of the
> moral turpitude statute is not ambiguous.
> Because the relevant statutory language refers
> only to convictions, not to conduct or to
> "committing" acts, there is no uncertainty in
> the statutory language created by the use of
> the phrase "convicted of" in the same statute
> as the words "committing" and "involving."
> Thus, in a case such as the present one in
> which the only issue is the alien's prior
> conviction, the statute unambiguously directs
> that an adjudicator consider only the
> conviction itself, and not any underlying
> conduct.

In *Fajardo v. U.S. Atty. Gen.*, 659 F.3d 1303, 1309 (11th Cir.
2011), the Eleventh Circuit agreed that the phrase "convicted
of" is unambiguous and explicitly agreed with the Third

Circuit that the phrase "crime involving moral turpitude" is a "term of art" describing a generic crime. *Id.* at 1309–10.

We are aware that two circuits disagree. The Seventh and Eighth Circuits both permit the IJ to consider evidence outside the record of conviction to determine whether an alien has been convicted of a CIMT. In *Ali v. Mukasey*, 521 F.3d 737, 741 (7th Cir. 2008), the Seventh Circuit wrote that, with respect to "crimes involving moral turpitude," there are two questions a court must answer: first, "the fact of the prior conviction," for which the IJ cannot go outside the record of conviction, and second, "the appropriate classification of that conviction, which may require additional information." *Id.* Though it did not state the matter in precisely these terms, we understand the court in *Ali* to have concluded that moral turpitude is not an element of the generic offense of a CIMT that can be proved only by evidence in the record of conviction, but rather a descriptive circumstance added to the separately defined particular crime of which the petitioner has actually been convicted. In *Bobadilla v. Holder*, 679 F.3d 1052, 1055 (8th Cir. 2012), the Eighth Circuit wrote that "[b]ecause 'moral turpitude' is not an element of any criminal offense," the IJ can look beyond the fact of conviction to the circumstances of the crime to determine whether moral turpitude was involved. For the reasons given above, we disagree with these courts' conclusion that "moral turpitude" is not an element of a CIMT.

We agree with the Third, Fourth, and Eleventh Circuits that the relevant provisions of the INA are not ambiguous and that we do not owe *Chevron* deference to the Attorney General's opinion in *Silva-Trevino*. A "crime involving moral turpitude" is a generic crime whose description is complete unto itself, such that "involving moral turpitude" is

an element of the crime. Because it is an element of the generic crime, an IJ is limited to the record of conviction in determining whether an alien has been "convicted of" a CIMT. We conclude that *Silva-Trevino* was wrongly decided, and that the IJ and the BIA improperly considered evidence beyond the record of conviction in holding that Olivas-Motta was "convicted of" a "crime involving moral turpitude."

## IV. Postscript

Two years after it decided Olivas-Motta's appeal, the BIA concluded that reckless endangerment "with a substantial risk of imminent death" in violation of Arizona law is categorically a CIMT. *See In re Leal*, 26 I. & N. Dec. 20, 27 (BIA 2012). The government has filed a post-argument brief in this court based on *In re Leal*. It does not request a remand to the BIA to allow it to apply *In re Leal*. Rather, it requests only that we deny Olivas-Motta's petition on the current record.

We decide a petition for review based on the grounds relied upon by the BIA. *Ali v. Holder*, 637 F.3d 1025, 1029 (9th Cir. 2011). The BIA did not decide Olivas-Motta's appeal based on a conclusion that the Arizona endangerment statute is categorically a CIMT. Indeed, the BIA held specifically in Olivas-Motta's appeal that the Arizona endangerment statute is *not* categorically a CIMT. We therefore cannot deny Olivas-Motta's petition on the ground that it is. We intimate no view as to correctness of *In re Leal*. We hold only that we cannot deny Olivas-Motta's petition based on a conclusion reached by the BIA in a separate case decided two years after it decided the appeal now before us.

### Conclusion

For the foregoing reasons, we grant the petition and remand for proceedings consistent with this opinion.

Petition **GRANTED** and **REMANDED**.

---

KLEINFELD, Senior Circuit Judge, concurring:

I concur in the result. I respectfully disagree, though, with the majority's wholesale rejection of deference to the Attorney General's opinion. We owe deference to the agency charged with construing the statute. The Attorney General's opinion, reasonably construed, is not arbitrary or capricious. We need not decide in this case whether to accept or reject the opinion, because it was misapplied.

The statute at issue in this case says that an admitted alien shall be removed if the alien has been "convicted of two or more crimes involving moral turpitude."[1] We held in *Marmolejo-Campos v. Holder*[2] that "moral turpitude" was "perhaps the quintessential example of an ambiguous phrase,"[3] and that *Chevron* and *Skidmore* deference applied to BIA determinations "once the elements of the petitioner's offense are established" to determine whether the particular

---

[1] 8 U.S.C. § 1227(a)(2)(A)(ii).

[2] *Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009) (en banc).

[3] *Id.* at 909.

crime was one of moral turpitude.**[4]**  We withheld judgment on the third step in the Attorney General's *Silva-Trevino***[5]** opinion, that Immigration Judges may look beyond the evidence cognizable under *Shepard v. United States*,**[6]** because the question was not squarely before us.**[7]**

The briefing in this case focuses on what we left unanswered in *Marmolejo-Campos*, the permissibility of going beyond *Shepard*-cognizable evidence.  The petitioner argues that reliance on the police report was mistaken because *Silva-Trevino* is an impermissible interpretation of the statute, while the government argues that it was appropriate because *Silva-Trevino* was within the interpretive authority of the Attorney General for a statute that the Department of Justice administers.

We should decline both parties' invitations to rule so much more broadly than this case requires.  *Silva-Trevino* tells Immigration Judges to look beyond *Shepard*-cognizable documents, but says nothing about police reports.  It tells Immigration Judges that they may look at other evidence "to the extent they deem it necessary and appropriate," without saying when that might or might not be so.**[8]**  This "necessary and [or] appropriate" phrase is considerably narrower than the

---

**[4]** *Id.* at 911.

**[5]** *In re Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008).

**[6]** *Shepard v. United States*, 544 U.S. 13 (2005).

**[7]** *Marmolejo-Campos*, 558 F.3d at 907 n.6.

**[8]** *In re Silva-Trevino*, 24 I. & N. Dec. at 690.

word "any" might be, because it requires necessity and appropriateness.

Congress commands that in removal proceedings, deportability must be proved "by clear and convincing evidence," and the deportability decision must be based on "reasonable, substantial, and probative evidence."[9] If we were to read *Silva-Trevino* to authorize Immigration Judges to rely upon evidence that was not "reasonable, substantial, and probative," then *Silva-Trevino* would have to be rejected as arbitrary and capricious.[10] To be admissible under the statute, "necessary" and "appropriate" evidence in the *Silva-Trevino* phrasing also has to be "reasonable, substantial, and probative." The Attorney General's opinion in *Silva-Trevino* must be, and doubtless was intended to be, limited by the statutory "reasonable, substantial, and probative" requirement.

We need decide only whether police reports are "reasonable, substantial, and probative evidence" that can prove by "clear and convincing evidence" that Olivas-Motta committed a crime involving moral turpitude.[11] We need not decide more generally whether *Silva-Trevino* merits *Chevron* deference.

It has long been clear that police reports are not generally "reasonable, substantial, and probative evidence" of what

---

[9] 8 U.S.C. § 1229a(c)(3)(A).

[10] 5 U.S.C. § 706(2)(A); *see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[11] 8 U.S.C. § 1229a(c)(3)(A).

someone did.   Despite their liberality toward public and business records, the Federal Rules of Evidence expressly make an exception, excluding police reports as evidence in criminal cases.[12]     In *Shepard v. United States*,[13] the government had argued that when applying the modified categorical approach, police reports ought to be considered in the limited context where they had been submitted to a local court to obtain a criminal complaint.[14]   The Supreme Court characterized the government's argument as a "menace to *Taylor*,"[15] far too expansive.[16]   And that would not be as expansive as what the government seeks here, use of police reports where the record does not show that any court ever relied on them to issue a complaint.

A police report is a device useful for many purposes, such as recording a contemporaneous recollection of what the officers observed and what they understood people to have told them.    A police report usefully guides further investigation.    The report helps prosecutors and defense lawyers locate useful witnesses.   But police reports are not especially useful instruments for finding out what persons charged actually did.   All the defects of hearsay, double hearsay, and triple hearsay apply, since people may speak to

---

[12] Fed. R. Evid. 803(8)(A)(ii).

[13] *Shepard v. United States*, 544 U.S. 13 (2005).

[14] *Id.* at 21.

[15] *Taylor v. United States*, 495 U.S. 575 (1995).

[16] *Shepard*, 544 U.S. at 22; *see also In re Milian-Dubon*, 25 I. & N. Dec. 197, 197 (2010) (explaining that "a police report, standing alone, is not part of the record of conviction").

the police despite lack of personal knowledge and lack of adequate observation, may be misunderstood, and what they say may be misreported.[17]    People sometimes lie or exaggerate when they talk to the police.

If *Silva-Trevino* said (which it does not) that Immigration Judges should rest their decisions on what police reports say, we would properly hold that *Silva-Trevino* was a mistaken interpretation of the statute requiring "reasonable, substantial, and probative" evidence.[18]    Since police reports are not "reasonable, substantial, and probative" they are not "appropriate" under *Silva-Trevino*.    Even if the statutory standard were more liberal, the BIA needs "clear and convincing" evidence for removal, and something as potentially inaccurate as a police report cannot be "clear and convincing" evidence.[19]    We need not reach whether *Silva-Trevino* merits *Chevron* deference, because *Silva-Trevino* does not say or imply that the Immigration Judge and the BIA may rely on police reports to determine whether a crime was one of moral turpitude.    The BIA's reliance on the police report in this case was mistaken.    I would remand for that reason, and would not address whether *Silva-Trevino* merits *Chevron* deference.

---

[17] *See Prudencio v. Holder*, 669 F.3d 472, 483–84 (4th Cir. 2012) ("[P]olice reports . . . often contain little more than unsworn witness statements and initial impressions . . . .    Further, because the[y] are generated early in an investigation, they do not account for later events, such as witness recantations, amendments, or corrections.").

[18] 8 U.S.C. § 1229a(c)(3)(A).

[19] *Id.*

Nothing since *Marmolejo-Campos* came down in 2009 has changed the fact that "moral turpitude" is "perhaps the quintessential example of an ambiguous phrase."[20]   The majority concedes that the term is "famously ambiguous."  At one time, the phrase was more understandable, and seemed to refer to crimes involving sex or fraud, but no longer.  Given the inherent ambiguity in the statute, the Attorney General was justified in laying out a uniform standard for Immigration Judges to apply when determining whether an alien was convicted of a crime involving moral turpitude.

The majority places more weight on the phrase "convicted of" than it can bear.  The phrase could mean, as the majority asserts, that we may not look to conduct that an alien committed.  Though we so held in *Tokatly v. Ashcroft*,[21] the ambiguity of the phrase supports a need for deference to the subsequent interpretation by the administrative agency.

*Tokatly* did not deal with a situation where the Attorney General has issued a decision directly on point.  There was no such contrary agency view to which we could defer.  When *Tokatly* was decided, we were in agreement with the BIA's position when we expressed our fear of "mini-trials."[22]   The agency's position has changed.  The Attorney General has determined that looking beyond the record of conviction is not an unmanageable burden.  We emphasized in *Tokatly* that

---

[20] *Marmolejo-Campos*, 558 F.3d at 909.

[21] *Tokatly v. Ashcroft*, 371 F.3d 613 (9th Cir. 2004).

[22] *Id.* at 621.

our position was the same as the BIA's.[23]  And *Nijhawan v. Holder*[24] forecloses any argument that the phrase "convicted of" in a removal statute always limits the inquiry to the modified categorical approach.  The Supreme Court held in *Nijhawan* that when determining whether an alien has been "*convicted of* an aggravated felony" for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii), "the 'fraud and deceit' provision before us calls for a 'circumstance-specific,' not a 'categorical,' interpretation."[25]  The Court rejected the petitioner's call for a modified categorical approach, because it did "not agree that fairness requires the evidentiary limitations he propose[d]."[26]  The Court feared that the modified categorical approach might "prove impractical insofar as it requires obtaining from a jury a special verdict on a fact that . . . is not an element of the offense."[27]

No statutory list of "crimes involving moral turpitude" exists.  The Attorney General has propounded a workable definition.  The Attorney General has apparently concluded that, just as some felonies are "aggravated" because of the circumstances under which they are committed, some crimes

---

[23] *Id.* at 623 ("Indeed the IJ's examination of the victim provides an example of the very fact-finding process that both the courts *and the Board* have deemed inappropriate and sought to avoid by strict adherence to the categorical and modified categorical methodology."); *id.* ("We decline to modify this court's – *and the Board's* – strict rules against extra-record of conviction evidence . . . .").

[24] *Nijhawan v. Holder*, 557 U.S. 29 (2009).

[25] *Id.* at 32, 36.

[26] *Id.* at 41.

[27] *Id.* at 42.

"involve moral turpitude" because of the circumstances under which they are committed.  This conclusion does not conflict with *Nijhawan*.

Because the statute is ambiguous and the Attorney General's construction is reasonable, I would join the Seventh and Eighth Circuits in holding that we should defer to *Silva-Trevino*.[28]  This would not give Immigration Judges unfettered discretion.  They are still limited by statute to "reasonable, substantial, and probative" evidence,[29] and the BIA still needs "clear and convincing" evidence for removal.[30]

---

[28] *See Bobadilla v. Holder*, 679 F.3d 1052 (8th Cir. 2012); *Mata-Guerrero v. Holder*, 627 F.3d 256 (7th Cir. 2010).

[29] 8 U.S.C. § 1229a(c)(3)(A).

[30] *Id.*